IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| RUTH R. CRADER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:05-0471 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 2.) Presently pending before the Court are Plaintiff's Motions for Remand (Doc. No. 9.) and to Submit Additional Evidence (Doc. No. 14.) and Defendant's Motion for Judgment on the Pleadings. (Doc. No. 12.)

The Plaintiff, Ruth R. Crader (hereinafter referred to as "Claimant"), filed an application for DIB on July 22, 2003 (protective filing date), alleging disability as of August 8, 2001, due to carpal tunnel syndrome; lateral epicondylitis; cervical, dorsal, and lumbar sprain; depression; a shoulder spur; and fibromyalgia.[1] (Tr. at 55-57, 79.) The claim was denied initially and upon reconsideration.

---

[1] Claimant initially filed an Application for DIB on July 22, 2003, alleging disability as of August 8, 2001. (Tr. at 11.) Following an administrative hearing, Claimant's Application was denied by an Administrative Law Judge on January 28, 2003. (Tr. at 11.) Claimant took no further action. Accordingly, the ALJ found that the doctrine of *res judicata* barred consideration of Claimant's

(Tr. at 29-33, 36-37.) On December 8, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 38.) A video teleconference hearing was held on September 8, 2004, before the Honorable Brian P. Kilbane. (Tr. at 281-347.) On October 22, 2004, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 11-19.) The ALJ's decision became the final decision of the Commissioner on May 9, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On June 8, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.

---

disability status prior to January 28, 2003. (Tr. at 12.)

20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of carpal tunnel syndrome; tennis elbow; chronic neck, shoulder and back pain; and fibromyalgia. (Tr. at 15.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant had a residual functional capacity for work at the light exertional level requiring "only occasional climbing, balancing, stooping, kneeling, crouching, or crawling, and no concentrated exposure to vibration or workplace hazards such as moving machinery and heights." (Tr. at 17, 18.) At step four, the ALJ determined that Claimant retained the residual functional capacity to return to her past relevant work as a bank teller as the job is generally performed in the national economy and as a billing clerk as the job is generally performed and as Claimant performed it. (Tr. at 18.) On this basis, benefits were denied. (Tr. at 18-19.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 5, 1951, and was 52 years old at the time of the administrative hearing. (Tr. at 11, 55, 284.) Claimant had a high school equivalent education. (Tr. at 11, 284-85.) In the past, she worked as a bank teller, billing clerk, and waitress. (Tr. at 11, 285-90.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) misapplied Social Security Ruling (SSR) 82-61 in determining that she could perform her past relevant work and (2) failed to consider her carpal tunnel syndrome. In further support of her Motion for Remand, Claimant submits to the Court the November 3, 2005, decision of the Social Security Administration (SSA) based on a subsequent application filed by Claimant. (Doc. No. 14.) The Commissioner asserts that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit.

1. Past Relevant Work.

Claimant first argues that the ALJ erred in determining that she could return to her past relevant work as a bank teller. (Pl.'s Br. at 2-4.) Claimant takes issue with the ALJ's application of SSR 82-61 and failure to explain the discrepancy between Claimant's past relevant work as performed by her and the DOT's description of her past relevant work. (Pl.'s Br. at 4-5.) The Commissioner asserts that SSR 82-61 permits an ALJ to render a decision of "not disabled" if the claimant is capable of performing past relevant work either as actually performed by the claimant or as generally performed in the national economy. (Def.'s Br. at 9.) In this instance, the ALJ determined that Claimant could perform her past relevant work as a bank teller as generally performed in the national economy, and therefore, the Commissioner asserts that Claimant's argument is without merit. (Id.)

The Regulations provide that when it cannot be decided whether a claimant is disabled on medical evidence alone, the Agency will consider the individual's residual functional capacity together with his or her vocational background. See 20 C.F.R. § 404.1560(a) (2004). Residual functional capacity will be compared with the physical and mental demands of the claimant's past

work, and if the person can still perform his past relevant work, he will be found not disabled. See id. § 404.1560(b). Past work experience is relevant when it is work that was performed in the last 15 years, which lasted long enough for the person to learn to do it and which was substantial gainful activity. See 20 C.F.R. § 404.1565(a). Substantial gainful activity is "work activity that is both substantial and gainful." Id. § 404.1572. Substantial work activity involves significant physical or mental activities, and work may be substantial even if it is done part-time. Id. § 404.1572(a). Gainful work activity is work done for pay or profit, whether or not a profit is realized. Id. § 404.1572(b).

In determining whether a claimant can perform her past relevant work ("PRW"), the Regulations provide that the claimant will be asked to provide information about past work and that the Commissioner will consult other sources, including vocational experts and specialists, as well as the Dictionary of Occupational Titles ("DOT"), in obtaining necessary evidence about the PRW. See 20 C.F.R. § 404.1560(b)(2) (2004). With regard to the role of Vocational Experts ("VE") in this determination, the Regulations provide as follows:

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

Id.

Social Security Ruling (SSR) 82-62 notes that "[t]he RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a

sufficient basis for a finding of 'not disabled.'" SSR 82-62, 1982 WL 31386, *3. This Ruling also requires the following specific findings of fact when the Commissioner determines that a Claimant can return to his or her past relevant work:

    1. A finding of fact as to the individual's RFC.

    2. A finding of fact as to the physical and mental demands of the past job/occupation.

    3. A finding of fact that the individual's RFC would permit a return to his or her past

    job or occupation.

SSR 82-62, 1982 WL 31386, *4. Social Security Ruling 82-61 establishes two main tests for determining whether a claimant retains the capacity to perform his or her past relevant work: (1) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he actually performed it; or (2) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. See SSR 82-61, 1982 WL 31387. In using the second test, the DOT descriptions can be relied upon to define the job as it is usually performed in the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.' " Id. at *2.

    In the instant case, the ALJ determined that Claimant had the residual functional capacity to perform work at the light level of exertion that involved only occasional climbing, balancing, stooping, kneeling, crouching, or crawling, and no concentrated exposure to vibration or workplace hazards such as moving machinery or heights. (Tr. at 17-18.) Claimant testified that her PRW as a bank teller required her to carry a 27 pound cash box and a 50 pound coin box four to five times a

day when working in the capacity as a merchant teller and two times a day when working as a standard bank teller. (Tr. at 285-86.) As a bank teller, Claimant worked six hour shifts, three days a week, with three hours each shift spent standing and three hours spent sitting. (Tr. at 287.) She stated that the job required her to twist back and forth between her computer and money drawer. (Id.) In her PRW as a billing clerk, Claimant testified that she worked three days a week retrieving files, typing, writing, and recording receipts. (Tr. at 290.) She did not use a computer in performing her billing clerk work functions. (Id.) The VE testified that Claimant's PRW as a bank teller was skilled work generally performed at the light exertional level as described in the DOT, but that as Claimant described and performed the job, it was performed at the "heavier into the medium category." (Tr. at 313.) With respect to the billing clerk job, the VE testified that it was semi-skilled work generally performed at the sedentary exertional level. (Id.) The VE noted that these descriptions were consistent with the DOT. (Tr. at 314.) The ALJ noted the VE's testimony in his opinion, and therefore, made the requisite findings of fact as to the physical and mental demands of Claimant's past relevant work. (Tr. at 17-18.) Based upon VE testimony, the ALJ determined that Claimant could return to her PRW as a bank teller "as this job is generally performed in the national economy," and as a billing clerk "as this job is generally performed and as she performed it." (Tr. at 18.)

Citing Stetler v. Shalala, 883 F.Supp. 1180 (N.D. Ind. 1995), Claimant argues that when the PRW as actually performed differs from the description of the job contained in the DOT, the ALJ cannot rely on the DOT description to support a finding of not disabled. (Pl.'s Br. at 3.) Rather, Claimant argues that the ALJ must evaluate the facts and circumstances of the particular case to determine whether the claimant is able to return to her PRW. (Id.) The undersigned finds that Claimant's reliance on Stetler is not entirely warranted. In Stetler, the ALJ erroneously accepted the

8

VE's testimony that the claimant's PRW was as a licensed practical nurse ("LPN"), as described in the DOT, although the evidence of record established that she neither completed LPN training, was never certified, nor worked as an LPN. Stetler, 883 F.Supp. at 1184-85. The District Court noted that the claimant's description of the functions of her past work exceeded the functions contained in the DOT's description for a licensed practical nurse. Id. at 1185.

> If "LPN" is merely the closest occupation listed in the DOT to Stetler's described job, the VE and ALJ would perhaps be justified in basing some findings on the DOT's listing, but certainly not information that conflicts with the uncontradicted evidence of Stetler's duties. Stetler did not say "I am an LPN" and leave it at that, a scenario which would justify unthinking reliance on the DOT. She did not claim to be an LPN at all, and the evidence does not support a finding that she was. She described her job in detail. Her description includes duties beyond that of the DOT's LPN description. If Stetler really were an LPN, the presumption that the DOT's listing was correct would be stronger than where, as here, the DOT's listing is merely a close match to some of the duties of the claimant's past relevant work. The record in this case is faulty, and this court can not perform an appropriate review.

Id. The District Court further found that the ALJ erroneously accepted the VE's testimony that the claimant's PRW was performed at a medium exertional level despite evidence demonstrating that she actually performed the job at either the heavy or very heavy exertional level. Id. The Court, finding that the claimant's PRW was a "composite" job under SSR 82-61, remanded the case for further proceedings to determine whether she "fits into a category which, as performed in the national economy, requires only a medium exertional level." Id. at 1186.

Similar to Stetler's argument, in the instant case, Claimant argues that her actual past work as a bank teller was performed at a medium exertional level, which is greater than the light exertional level as described in the DOT. (Pl.'s Br. at 3.) The greater exertion was based upon her having to carry cash and coin trays weighing approximately 27 and 50 pounds, respectively. (Id.; Tr. at 285.) Unlike Stetler, however, Claimant does not otherwise challenge the DOT's description of the bank teller job and concedes that she actually worked as a bank teller. (Tr. at 98-99, 285-88.)

9

Although Claimant testified that she worked as a "merchant bank teller" and as a "standard bank teller," the titles are irrelevant to this analysis because she was required to lift the same amounts, only more frequently with the merchant bank teller job.[2] (Id.) With the exception of the exertional level required, the descriptions of the bank teller job as Claimant performed it and as generally performed in the national economy (Pl.'s Br. at 10-13.) are similar. The burden is on the claimant to show that she cannot perform her past relevant work. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In meeting this burden, the claimant must "show an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1993). The ALJ recognized in his RFC assessment that Claimant was unable to return to work at the medium exertional level and found that although Claimant cannot perform the particular functional demands of her specific PRW as she performed it due to the lifting requirements, she retains the ability to perform her past occupation as a bank teller as that job is generally performed in the national economy. (Tr. at 17-18.) This finding was based upon application of one of the two tests outlined in SSR 82-61 for determining whether a claimant retains the capacity to perform her PRW. See SSR 82-61, 1982 WL 31387. There being no alleged discrepancy between the VE's testimony and the information contained in the DOT, the undersigned finds that the ALJ's decision is supported by substantial evidence; the ALJ was not required to explain further any discrepancy between the PRW as actually performed and as described in the DOT.

---

[2] Although not cited by Claimant, the undersigned notes the *DOT*'s listing for a Vault Teller. The functions of this particular teller position, which is performed at the medium exertional level, include filling orders for currency and coins. 211.382-010. This function resembles in part one aspect of the duties of Claimant's past work as a "merchant teller." Nevertheless, the record does not indicate that Claimant performed all of the functions of this listing. Because the record does establish that Claimant performed the functions as contained in the General Teller listing which is attached to Claimant's Motion, the undersigned does not consider the job under the Vault Teller listing and mentions it only to highly the similarity of one listed function.

10

2. <u>Carpal Tunnel Syndrome</u>.

Claimant next argues that the ALJ failed to acknowledge any limitations from her severe carpal tunnel syndrome impairment with respect to her ability to return to her PRW as a bank teller or billing clerk. (Pl.'s Br. at 4-7.) She avers that her condition would be exacerbated by the constant manipulative functions required by both jobs. (<u>Id.</u> at 5-6.) Although Claimant had mild carpal tunnel syndrome, the Commissioner asserts that the evidence demonstrated that she nevertheless could perform light work with some limitations. (Def.'s Br. at 10-11.) The Commissioner thus argues that the ALJ's decision is supported by substantial evidence.

The Regulations define a severe impairment as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2004). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs" including, but not limited to, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b) (2004). The ALJ determined that Claimant suffered from the severe impairments of carpal tunnel syndrome; tennis elbow; chronic neck, shoulder, and back pain; and fibromyalgia. (Tr. at 15, 18, Finding 3.) As reflected in his RFC assessment, the ALJ found that Claimant's severe impairments limited her ability to perform many physical basic work activities such as lifting, carrying, climbing, balancing, stooping, kneeling, and crouching. (Tr. at 17-18, Finding 6.) Claimant argues that the ALJ's finding that her carpal tunnel syndrome was a severe impairment is inconsistent with his not finding that performing her past work as a bank teller or billing clerk would exacerbate her condition. (Pl.'s Br. at 4-7.)

The undersigned finds Claimant's argument on this point unavailing. The ALJ reviewed and summarized the medical evidence of record in his decision which revealed that on March 21, 2003, Dr. John H. Schmidt, orthopedic surgeon, noted that on physical examination, Claimant had full

11

strength (5/5) in her upper and lower extremities bilaterally. (Tr. at 13, 143.) On May 8, 2003, electromyogram (EMG) and nerve conduction studies (NCS) performed by Dr. Joe Othman, neurologist, revealed mild bilateral carpal tunnel syndrome, dominant on the right side. (Tr. at 13, 126-27.) Dr. Othman noted Claimant's complaints of bilateral wrist pain and fatigue in her hands and noted on exam that she had a mild loss of grip which was greater in the right hand. (Tr. at 128.) Claimant was examined on July 8, 2003, by Dr. Syed Zahir for complaints of numbness in her hands and an increased tendency to drop things for the past several months. (Tr. at 13, 163-64.) Dr. Zahir noted that Claimant had positive Tinel's sign on the medium nerve and bilateral numbness. (Tr. at 163-64.) He diagnosed bilateral carpal tunnel syndrome, worse on the right, gave Claimant wrist braces to wear, and suggested carpal tunnel release, synovectomy, and neurolysis under axillary block. (Tr. at 13, 164.) Plaintiff underwent surgery on July 9, 2003, before which she experienced non-rhythmic and uncontrolled "jerking" movements of the right arm immediately after she received Carbocaine for the axillary block. (Tr. at 13, 167.) Dr. Murugappan, neurologist, suspected that she may have had a reaction to Carbocaine. (Tr. at 13, 161.) The movements subsided and it was noted that Claimant was able to wiggle her fingers after the surgery. (Id.) Claimant was referred to Dr. Nancy L. Nichols for evaluation of the right upper extremity tremor that Claimant reported experiencing since the surgery. (Tr. at 14, 167-68. ) On physical exam conducted July 29, 2003, Dr. Nichols reported that Claimant's sensory was decreased over the right hand to light touch and pinprick but indicated that her musculoskeletal system was within normal limits. (Tr. at 14, 168.) Claimant reported no history of seizures or tremors and Dr. Nichols found that she had no neurological defects. (Id.) Dr. Nichols reported that Claimant had no signs of tremors during the exam except when she commented on the lack of any tremors. (Id.) She ordered an EEG and EMG of Claimant's right upper extremity. (Tr. at 168.) Claimant underwent an electromyography (EMG)

of her upper extremities on August 7, 2003, which revealed no evidence of carpal tunnel syndrome or other nerve injury in the right arm. (Tr. at 14, 165-66.)

On September 12, 2003, Claimant was examined by Dr. Shishir Shah, a pain management specialist, who noted that she had full grip strength on the left and 4/5 grip strength on the right. (Tr. at 14, 189-92.) Claimant was also examined on that date by Dr. Zahir for complaints of pain and swelling of the right wrist. (Tr. at 14, 194.) Dr. Zahir noted that there was a considerable amount of induration at the level of the right wrist and recommended ultrasound treatment. (Id.) From November 26, 2003, through February 16, 2004, Claimant underwent physical therapy for her bilateral carpal tunnel syndrome, which treatment consisted of ultrasound to the right wrist, soft tissue mobilization, and carpal tunnel nerve gliding exercises. (Tr. at 245-46.) Claimant experienced very little improvement from physical therapy treatment in her pain level of the right wrist. (Id.)

On October 28, 2003, a State Agency medical consultant noted that Claimant has had good results with good grip strength since her surgery, and therefore, opined that her manipulative abilities were not limited by her condition. (Tr. at 15, 200.) The consultant opined that she was able to perform work at the light exertional level, with occasional postural and environmental limitations. (Tr. at 15, 199-200.) On May 6, 2004, Dr. Othman conducted further EMG and NCS studies of both upper extremities and cervical paraspinals, which revealed mild bilateral carpal tunnel syndrome but no evidence of cervical radiculopathy on either side. (Tr. at 14, 240-41.)

The ALJ noted Claimant's statements that she continues to experience pain in her right wrist throughout the day and that she wears a brace and uses a TENS unit which alleviates some pain in her neck, back, and arms. (Tr. at 294.) The ALJ further noted Claimant's statement that she requires assistance in buttoning her clothing. (Tr. at 16, 298.) A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence

13

of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 416.929(b) (2003); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4) (2003). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3) (2003).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

15

Noting inconsistencies in the record, the ALJ found that Claimant's complaints of pain due to her carpal tunnel syndrome were not entirely reflected in the medical record. (Tr. at 16.) Despite Claimant's complaints of continuous pain, EMG studies indicated that she had only mild carpal tunnel syndrome and that she had only a slight decrease in grip strength following the surgery. (Tr. at 16-17.) Additionally, the medical evidence does not support her complaints of tremors in the right hand. (Tr. at 17.) Although Claimant argues that she cannot perform the manipulative functions required of her PRW, the record is practically devoid of any medical evidence demonstrating that she was unable to perform the reaching, handling, and fingering required of her past work. The only objective evidence referencing such limitations was the assessment rendered prior to her surgery, which indicated that her manipulative abilities were limited by her carpal tunnel syndrome. (Tr. at 181-88.) This assessment, however, was conducted prior to her surgery and the assessment conducted after her surgery, indicated that she had good results from the surgery. (Tr. at 200.) The ALJ also noted that Claimant occasionally cooked, with some assistance, shopped for food and clothing, and visited family and friends. (Tr. at 17.) Claimant also indicated on written forms that she paid the bills, which obviously involved use of her hands to some extent either through writing or computing. (Tr. at 106.) Furthermore, Claimant failed to testify at the administrative hearing as to any limitation, other than lifting and carrying, resulting from her carpal tunnel syndrome which prevented her from returning to her PRW. Accordingly, the ALJ properly evaluated Claimant's allegations of pain and determined that Claimant failed to meet her burden at step four by establishing that she was unable to perform her PRW. The ALJ's evaluation of the medical opinions, of the evidence of record, and Claimant's allegations of pain was proper and supported by substantial evidence.

Based on the foregoing, the ALJ properly considered Claimant's mild carpal tunnel syndrome impairment and limited her functional capacity for lifting and carrying. The ALJ made

16

a proper determination of Claimant's residual functional capacity in accordance with the applicable law and Regulations. Accordingly, Claimant's argument is without merit.

3. Motion to Submit Additional Evidence.

In considering Claimant's Motion to Submit Additional Evidence, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98.

To justify a remand to consider newly submitted evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[3] In

---

[3] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in *Borders* in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent *Borders* four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, *Borders* has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that *Borders*' construction of § 405(g) is incorrect. Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. Id.

With regard to the new evidence submitted, the Claimant has not satisfied all four factors of Borders, and therefore, remand is inappropriate. Claimant has submitted to the Court the decision of the Social Security Administration ("SSA") dated November 3, 2005, which states: "We realize that your condition prevents you from doing your past job as a bank teller, but based on your age, education, and work experience, it does not prevent you from doing other less demanding work." (Doc. No. 14, Exhibit A at 2.) Claimant argues that this information is directly relevant to her claim that remand is warranted upon the ALJ's error in finding that she could perform her PRW. (Doc. No. 14 at 1.) The Commissioner asserts that the evidence is irrelevant because it is based on a subsequent application for benefits. (Doc. No. 15 at 2.) The Commissioner argues that the issue before the Court "is whether the ALJ properly found [Claimant] not disabled at any time through the date of his decision." (Id.) Furthermore, the Commissioner asserts that the "evidence does not relate to the time period that the ALJ considered does not relate to the period that the ALJ considered in his reaching his decision, and therefore, should not be admitted. (Id.)

The undersigned agrees with the Commissioner and finds that the newly submitted evidence does not provide a basis for remand under Borders. The SSA's decision was not in existence at the

---

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W.Va. 1992) (citations omitted).

18

time of the ALJ's decision, and therefore, there is good cause shown as to why the decision was not submitted for review. However, Claimant has not established that the newly submitted evidence is either material or relevant. The evidence which supported the SSA's decision that Claimant can no longer perform her PRW as a bank teller presumably occurred after the date of the ALJ's decision, and therefore, does not relate to the period of time considered by the ALJ in rendering his decision, specifically from January 28, 2003, to October 22, 2004. Furthermore, the SSA's decision limits only Claimant's ability to return to her PRW as a bank teller. The ALJ found in his October 2004, decision that Claimant was able to return to her PRW as a bank teller and as a billing clerk. Under the <u>Borders</u> analysis, the SSA's decision therefore is neither relevant nor material of the ALJ's decision. The Claimant has failed to satisfy all four factors of <u>Borders</u>, and therefore, remand would be inappropriate; the SSA decision submitted to the Court does not provide a basis for changing the ALJ's decision and does not warrant a remand. The Court finds that the Commissioner's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **DENY** Plaintiff's Motion to Submit Additional Evidence, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections,

identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 25, 2006.

R. Clarke VanDervort
United States Magistrate Judge